**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

| | |
|---|---|
| **DAYNA L. SCRUGGS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 4:05cv0067AS** |
| ) | |
| **GARST AGRIPRO,** ) | |
| ) | |
| **Defendant.** ) | |

**<u>MEMORANDUM, OPINION, & ORDER</u>**

This matter is now before the Court on the Motion for Summary Judgment (Docket No. 38) filed by Defendant Garst AgriPro and the Motion to Strike (Docket No. 46) filed by Plaintiff Dayna L. Scruggs.  The Court heard oral argument on these motions on April 16, 2007, in South Bend, Indiana, and the issues have been fully briefed.  For the reasons set forth below, Plaintiff's motion to strike is **DENIED**. The Defendant's motion for summary judgment is **GRANTED** in its entirety.  Accordingly, the Clerk is **ORDERED to DISMISS** this case **with prejudice**.

I. <u>Introduction</u>

On August 29, 2005, Plaintiff, Dayna L. Scruggs ("Plaintiff" or "Scruggs"), brought suit against her former employer, Garst AgriPro ("Garst") The Complaint was originally filed in the White Circuit Court in Monticello, Indiana and included four (4)

counts.[1]  The cause of action was removed to this Court on September 20, 2005.  The

Plaintiff's complaint alleges sex discrimination, hostile work environment, and retaliation

pursuant to Title VII of the Civil Rights Act of 1964 as amended, Title 42, United States

Code, Section 2000e and following sections, as amended by the Civil Rights Act of 1991,

Pub.L.No. 102-166, 105 Stat. 1071, *et seq.*  Defendant filed its motion for summary

judgment claiming there is no genuine issue of material fact and that it is entitled to

judgment as a matter of law.  Plaintiff filed a Motion to Strike Defendant's motion for

summary judgment or, in the alternative, Barton Fogleman's affidavit.

II.  Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)*;  Bragg v. Navistar Int'l Trans.

Corp.*, 164 F.3d 373 (7th Cir. 1998).  After affording the parties adequate time for

discovery, a court must grant summary judgment against a party "who fails to make a

showing sufficient to establish the existence of an element essential to that party's case,

on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

The initial burden is on the moving party to demonstrate, "with or without

---

[1]The Plaintiff has abandoned Counts 3 and 4, and only Counts 1 and 2 remain
pending.

supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56); *Larimer v. Dayton Hudson Corp*., 137 F.3d 497 (7th Cir. 1998), *reh'g denied*. A question of material fact is a question which will be outcome- determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248. The moving party may discharge this initial burden by demonstrating that there is insufficient evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. The moving party may also choose to support its motion for summary judgment with affidavits and other admissible material, thereby shifting the burden to the nonmoving party to demonstrate that an issue of material fact exists. *Steen,* 2006 WL 335521 at *1 (7th Cir. Feb. 13, 2006); *See Kaszuk v. Bakery & Confectionary Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982. The nonmoving party cannot rest on its pleadings, *Weicherding v. Riefel,* 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American Hoechst Corp*., 24 F.3d 918, 920-21 (7th Cir. 1994); nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library* Sys., 60 F.3d 317, 320 (7th Cir. 1995).

During its summary judgment analysis, the court must analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at

252-55.  The court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party.  *Bombard v. Fort Wayne Newspapers, Inc*., 92 F.3d 560 (7th Cir. 1996).  However, the plaintiff must do more than raise a "metaphysical doubt" as to the material facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 577 (1986).  Rather, she must come forward with "specific facts" showing that there is a genuine issue for trial.  *Id.* at 587 (*quoting* FED. R. CIV. P. 56(e)).

III.  Facts[2]

 In the late 1980s, Scallop Shell purchased AgriPro, a seed breeding and seed sales company.  In 1986, AgriPro hired the Plaintiff, Dayna L. Scruggs (hereinafter "Plaintiff" or "Scruggs") as a part-time employee.  Her employment status at AgriPro changed to full-time in 1987 when Scruggs began working as a Research Technician.  In 1994, AgriPro was purchased by Helena Chemical Company ("Helena"), and in 2000, Garst Seed Company ("Garst") purchased AgriPro from Helena.  At that point, Scruggs became employed by Garst.  She maintained her employment at Garst until 2004, when Garst was purchased by Syngenta Seeds, Inc. ("Syngenta").

Garst produced plant seeds by cultivation and genetic manipulation and then sold the seeds.  While employed by Garst, Scruggs worked at Garst's Brookston, Indiana seed breeding research facility; the individuals working at the Brookston facility worked on soft wheat and soybean breeding.  (Scruggs Deposition at 15).  Scruggs worked as the

---

[2]For summary judgment purposes, the facts are recited in the light most favorable to the nonmoving party.  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

Research Technician along with Curtis Beazer ("Beazer"), Wheat Breeder, and Eugene Glover ("Glover"), Research Assistant.  (Scruggs Deposition at 25-26).  The Wheat Breeder and Research Assistant positions are exempt, salaried positions, and the Research Technician position is a non-exempt, hourly position under wage/hour laws.  (Worrall Affidavit at ¶ 3-4).

Beazer and Scruggs began working together in 1989, and Beazer became Scruggs' supervisor in 1995.  Scruggs asserts that Beazer started making discriminatory comments towards her only after he became her supervisor.  (Scruggs Deposition at 102-103).  Scruggs also stated that Beazer treated men and badly as women and that he did not get along with a number of employees.  Scruggs contends that Beazer was looking for ways to get rid of her, ridiculed her (e.g. referred to her as the person "in charge of the cookies with sprinkles"), and delayed reimbursement for personally incurred expenses.

In March 2004, Scruggs attended a meeting of Garst employees in San Antonio, Texas, where Scruggs was to receive an award.  According to Scruggs, Beazer failed to inform Scruggs of the change in meeting time, causing Scruggs to miss the meeting.  During the same month, Scruggs, Beazer and Beazer's direct supervisor, David Worrall ("Worrall"), attended a breakfast meeting to discuss the issues between them.  Scruggs claims that after the meeting, Beazer walked ahead of her down the hall snapping his fingers, dancing, whistling, and singing.

Scruggs asserted that, in June 2004, Beazer and Worrall changed the requirements

5

of her job and requested that she obtain a Professional Chemical Applicators license and a DOT-certified driver's license.  There is no dispute, though, that Garst maintained the right and ability to change Scruggs' job requirements.  (Scruggs Deposition at 255-56; 258-59).

On June 28, 2004, Scruggs underwent shoulder surgery and was out of work on short-term disability leave until December 22, 2004.  In September 2004, Syngenta purchased a majority interest in Garst.  In November 2004, employees were informed that all non-exempt positions at soft wheat research facilities throughout the country would be eliminated and that the jobs at those research locations would be restructured.  The original three-member teams comprised of a Wheat Breeder, Research Assistant, and Research Technician would be restructured as follows:  Wheat Breeder, Assistant Wheat Breeder, and Research Assistant.  (Worrall Affidavit at ¶ 2-7).  Scruggs did not attend the meeting informing employees of the restructuring because she was out of work on short-term disability leave; however, Worrall telephoned Scruggs at that time and left a message informing Scruggs of the planned restructuring.  (*Id*. at ¶ 7).  Scruggs and Worrall also discussed the restructuring in February 2005, at which time Scruggs was informed that she was able to interview for any open positions at any facility.  (*Id*. at ¶ 8).

On December 2, 2004, Scruggs filed an Equal Employment Opportunity Commission ("EEOC") charge against Garst, alleging gender discrimination and retaliation.  D. J. Horrigan ("Horrigan"), the HR Manager for Garst, received a copy of

6

the charge around December 10, 2004.  Beazer was also informed of Scruggs' charge of

discrimination and retaliation at that time.  Worrall informed Beazer that he would not

continue as the site manager at the Brookston facility and that Barton Fogleman

("Fogleman") would replace him as Wheat Breeder; instead, Beazer was offered a

position in Junction City, Kansas – an offer Beazer later declined.

Scruggs interviewed for the restructured Research Assistant position at the

Brookston facility along with Glover and others.  The Research Assistant position

requires a Bachelor of Science degree or an acceptable combination of education or

experience.  Glover has a Bachelor of Science degree and previous years experience as a

Research Assistant.  Scruggs has a high school education but no college degree.  Scruggs

and Glover were interviewed by Worrall, Horrigan, and Fogleman.  Fogleman made the

ultimate hiring decision, and Glover was hired as the restructured Research Assistant

position.

On April 28, 2005, Scruggs filed her second EEOC charge, alleging Garst

terminated her employment in retaliation for filing her first EEOC charge.

IV.  Plaintiff's Motion to Strike

Before the Court can rule on Defendant's Motion for Summary Judgment it must

address Plaintiff's Motion to Strike (Docket No. 46).  On February 28, 2007, the Plaintiff

filed a motion to strike the Defendant's motion for summary judgment and supporting

documents on the basis of discovery misconduct.[3]  The Plaintiff argues that the Defendant

"has made material, contradictory, and false representations as to the identity of the

person who made the decision" [regarding Plaintiff's employment] and that the Plaintiff

relied on the Defendant's "misrepresentations to her determent, and deposed the person

the Defendant said could answer such questions, i.e., HR Manager D.J. Horrigan."

Motion to Strike at 1.  The Plaintiff stated that she first learned of the alleged

misrepresentations when she received the Defendant's motion for summary judgment and

stated that the Defendant concealed and misrepresented Fogleman's identity.  *Id*. at 2.

Finally, the Plaintiff contends that the Defendant's motion for summary judgment and

Fogleman's affidavits should be stricken as tainted evidence.

The Defendant responded by stating that Plaintiff's motion to strike is meritless.

Defendant's Response at 1.  The Defendant stated, "Scruggs knew who participated in her

interview for that position [at the Brookston facility] and understood who made the

decision not to hire her . . . Scruggs and her counsel also had ample opportunity to depose

Barton Fogleman – the decision maker – but simply chose not to do so.  Scruggs and her

counsel cannot now claim to have somehow been 'misled' by Garst."  *Id*.  Further, the

Defendant stated:

In his affidavit, Michael Kendall, Scruggs' counsel, claims that he spoke

---

[3]Alternatively, the Plaintiff requested that this Court strike the affidavits of the
tainted witness [Defendant's Exhibit G"] and deny the Defendant's motion for summary
judgment or deny the Defendant's motion for summary judgment.  *See* Motion to Strike at
1 and 2.

> with one of the attorneys representing Garst, Tyree Ayers, who allegedly
> told him that Mr. Horrigan was the person who made the decision not to
> hire Scruggs.  Ms. Ayers made no statement. . . . She never identified Mr.
> Horrigan as the "decision maker" regarding the restructured Research
> Specialist position for which Scruggs interviewed in March 2005.

Defendant's Response at 2 (citing Ayers Affidavit at ¶ 2) (emphasis omitted).  In

response to the Plaintiff's contention that this constituted a contradictory statement, the

Defendant asserts that the Plaintiff should have sent a letter confirming Ayers' alleged

statement.  Defendant's Response at 2.

Moreover, the Defendant asserts that the Plaintiff was already aware of Fogleman

and his participation in her interviews.  The Defendant asserts that the Plaintiff testified to

the fact that she was aware of Fogleman at her January 4, 2007 deposition and that on

January 4, 2007 and January 5, 2007, Mr. Horrigan also testified at his deposition

regarding Fogleman's involvement in the decision not to rehire the Plaintiff.  Defendant's

Response at 3 (citing Scruggs Deposition at 286-87, 319-20 and Horrigan Deposition at

278-280).  The Defendant contends that the Plaintiff "knew of Fogleman's involvement

in the decision-making process and could have deposed him if they wished to."

Defendant's Response at 5.  Accordingly, the Defendant asserts that the Plaintiff's motion

should be denied.

In general, motions to strike are disfavored.  *Williams v. Jader Fuel Co.*, 944 F.2d

1388. 1405-06 (7th Cir. 1991).  The party moving to strike has the burden of showing that

the challenged allegations are "devoid of merit, unworthy of consideration, and unduly

prejudicial." *E & J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F.Supp.2d 979, 982

(N.D. Ill. 2003) (internal quotation marks and citations omitted). Here, the Plaintiff failed

to cite to any rule[4] or authority to support its contention the Defendant's entire motion for

summary judgment, or in the alternative that Fogleman's affidavit, should be stricken.

The Court notes that "motions may be proper despite the lack of a specific rule" and that

courts may strike an entire brief because of substantial violations of the rules of [civil]

procedure.  *See Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725, 727 (7th Cir.

2006) (in chambers).  Nevertheless, this is not the case here.  The Plaintiff has not argued

that Fogleman's affidavit is improperly designated evidence (*See* Fed. R. Civ. P. 56(e)),

that the information contained therein is unauthenticated or otherwise inadmissible (*See*

Fed. R. Evid. 901(a)), or that it is "redundant , immaterial, impertinent, or scandalous"

(*See* Fed. R. Civ. P. 12(f)).  Rather, the Plaintiff merely contends that Fogleman is a

"tainted witness" and that the Defendant engaged in discovery misconduct.

    This Court is unpersuaded.  As was recently noted in *Redwood v. Dobson*, 476

F.3d 462, 471 (7th Cir. 2007), "motions to strike words, sentences, or sections out of

briefs serve no purpose except to aggravate the opponent – and though that may have

been the goal here, this goal is not one the judicial system will help any litigant achieve.

Motions to strike disserve the interest of judicial economy.  The aggravation comes at an

---

[4]The Plaintiff only mentioned Rule 56 in the motion's title that appeared on the docket sheet.  Rule 56 was not mentioned or discussed anywhere in the Plaintiff's motion to strike.

unacceptable cost in judicial time." *Cf. Custom Vehicles*, 464 F.3d at 728.  Because this motion to strike appears to be nothing more than a procedural maneuver, the Plaintiff's motion to strike the Defendant's motion for summary judgment in its entirety is **DENIED**.  The Plaintiff's motion in the alternative to strike Fogleman's affidavit is also **DENIED**.

V. <u>Summary Judgment</u>

The Defendant filed its motion for summary judgment, asserting that the Plaintiff's claims are time barred prior to February 7, 2004, the Plaintiff's ADEA claims are barred, and that the Plaintiff's gender discrimination, hostile work environment, and retaliation claims fail as a matter of law.  As an initial matter, this Court notes that the Plaintiff is no longer pursuing her charge of age discrimination.  *See* Plaintiff's Response at 1.  The Court will address whether the Plaintiff's claims are time barred prior to February 7, 2004 and the Plaintiff's charges of gender discrimination, hostile work environment, and retaliation.

A. <u>Plaintiff's Claims Prior to February 7, 2004</u>

Garst asserts that Scruggs' claims are time barred prior to February 7, 2004, arguing that claimed actions prior to February 7, 2004 constitute alleged discrete discriminatory employment actions that fall outside the 300 day filing requirement. Defendant's Motion at 12.  As such, according to Garst, those claims are not actionable. *Id*.  Scruggs seeks to overcome the untimely filing of her EEOC complaint by alleging

11

that her claims in 2003 constitute a continuing violation of Title VII.

Title VII provides that a charge of discriminatory employment practices [here, on the basis of gender], shall be filed with the EEOC within 300 days "after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1).  When an employee fails to timely file such a charge with the EEOC, that employee is precluded from bringing a subsequent lawsuit under Title VII.  *Martinez v. United Auto. Aerospace & Agric. Implement Workers of Am.*, 772 F.2d 348, 350 (7th Cir. 1985).  "For purposes of this statute of limitations, discrete discriminatory employment actions such as termination, failure to promote, denial of a transfer, or refusal to hire are deemed to have taken place on the date they occurred, even if they form part of an ongoing practice or are connected with other acts."  *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 860 (7th Cir. 2005) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-11 (2002).  Discrete discriminatory acts are "not actionable if they are time barred, even when they are related to acts alleged in timely filed charges. . . . [and each] discrete discriminatory act starts a new clock for filing charges alleging that act."[5]  *Nat'l R.R. Passenger Corp.,* 536 U.S. at 113.  Moreover, the "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination."  *Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980).

---

[5]But note that the statute does not bar an employee from using the prior acts as background evidence in support of a timely claim.  *Nat'l R.R. Passenger Corp.,* 536 U.S. at 113.

The continuing violation theory of recovery allows an individual to include in her charge before the EEOC acts that may have occurred more than 300 days preceding the filing of that charge if at least one of the acts fell within the 300 day period.  To "assert a successful continuing violation claim, the facts alleged to have occurred within the three-hundred-day period must be 'related closely enough' to the prior acts such that they are to be considered one ongoing violation."  *Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 707 (7th Cir. 1995) (quoting *Doe v. R.R. Donnelley & Sons, Co.*, 42 F.3d 439, 446 (7th Cir. 1994)).

Scruggs' claims lack a sufficiently close nexus between Beazer's conduct in 2003 and the later conduct of other Syngenta employees to permit the characterization of a "continuing violation."  Scruggs has not alleged that Beazer played any role in the decision to restructure her position or the decision not to hire her for the restructured Research Specialist position.  The only statement Scruggs even makes with regard to whether there is a continuing violation is her assertion that "the act that occurred within the Three Hundred (300) day period were [*sic*] closely related to prior acts to be considered one continuing violation."  Plaintiff's Response at 24 (emphasis omitted). Scruggs' statement alone, without argument or evidence to support it, is insufficient to establish a continuing violation.  Scruggs' allegations of improper conduct by Beazer are sporadic, with instances of improper conduct occurring months apart.  This type of improper conduct constitutes discrete, discriminatory conduct.

13

Because Scruggs has failed to demonstrate that the Defendant's acts constitute a continuing violation, this Court find that those claimed acts were discrete, isolated, and completed acts which must be regarded as individual violations. Accordingly, the continuing violations doctrine is inapplicable, and Scruggs' claims prior to February 7, 2004 are time barred.

B. <u>Discrimination</u>

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 20002(a)(1). A plaintiff may prove discrimination through two methods – the direct method and the indirect method. *See Ptasznik v. St. Joseph Hosp.,* 464 F.3d 691, 695 (7th Cir. 2006); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006).

*1. Direct Method*

Under the direct method, the Plaintiff may prove discrimination through direct evidence. Direct evidence of discrimination is "evidence that, if believed by the trier of fact, would prove the fact in question 'without reliance on inference or presumption.'" *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (citations omitted). "Direct evidence is essentially an 'outright admission' that a challenged action was undertaken

14

for one of the forbidden reasons covered in Title VII."[6]  *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432-3 (7th Cir. 2005) (citations omitted).  The Seventh Circuit has noted that "such admissions are rarely encountered."  *Rogers*, 320 F.3d at 753; *see also Castleman v. Acme Boot Co.*, 959 F.2d 1417, 1420 (7th Cir. 1992).

The Plaintiff has failed to present any direct evidence of discrimination.  Her only examples of allegedly direct evidence are "'admissions against interest' found in the revealing notes of meetings and e-mails of the HR Manager, the Regional Manager, and two corporate directors, about Beazer's treatment of Scruggs, and her complaints about Beazer and inaction by management."  Plaintiff's Response at 5-6.  These statement are far from an "outright admission" of the type that is usually required under the direct evidence method.  *See Balderson v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 321 (7th Cir. 2003) (stating that "[d]irect evidence usually requires an admission by the decisionmaker.").  All of Scruggs' *discrimination* allegations focus on Beazer's conduct, not the conduct of HR Manager Horrigan ("Horrigan"), Regional Manager Worrall ("Worrall"), and directors Bruns and Sears.  Moreover, neither Beazer, Horrigan, Worrall, Bruns, nor Sears explicitly state that any adverse action was taken because of Scruggs' gender.   There are no statements that Garst treats employees differently because of gender.  The few facts to which Scruggs points provide no insight

---

[6]In age discrimination cases the Seventh Circuit has explained that direct evidence is exemplified by statements "taking the form of 'I fired you because of your age.'" *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted).

as to Beazer's motivation and fail to indicate that he discriminated against her because of her gender. Additionally, there is no evidence to show that Beazer was a decisionmaker[7] who could influence Garst's employment decisions. A statement by a non-decisionmaker is usually insufficient under the direct method because it fails to show any "real link" between the prohibited animus and the adverse employment action. *Adams v. Wal-Mart Stores, Inc.,* 324 F.3d 935, 939 (7th Cir. 2003).

A plaintiff may also prove discrimination under the direct method through circumstantial evidence. *Sylvester v. SOS Children's Villages Ill., Inc.*, 453 F.3d 900, 902 (7th Cir. 2006). This type of evidence has been described as the "kind of circumstantial evidence . . . that consists of ambiguous statements, suspicious timing, discrimination against other employees, and other pieces of evidence none conclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff." *Id*. at 902 (quoting *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994). But the Seventh Circuit made clear in *Sylvester* that circumstantial evidence need not "have a mosaic-like character" to preclude summary judgment for a defendant. *Sylvester*, 453 F.3d at, 903. Rather, it need only allow the trier of fact "to infer intentional discrimination by the decisionmaker." *Rogers*, 320 F.3d at 753.

Scruggs contends that the "admissions against interest" found in the meeting notes and e-mails constitute a "'convincing mosaic' of 'circumstantial evidence' (and direct

---

[7]"A decisionmaker is the person responsible for the contested decision." *Cardoso*, 427 F.3d at 433.

16

evidence) that constitute a large number of 'evidentiary pieces' showing discrimination and retaliation toward Mrs. Scruggs not only by Beazer, but HR Manager Horrigan, Regional Manager Worrall, and directors Bruns and Sears as well."  Plaintiff's Response at 6.  The record, however, does not support Scruggs' position.

Scruggs claims that Beazer made inappropriate comments to her but admits that Beazer treated men as badly as women.  Accordingly, Scruggs cannot point directly to a discriminatory reason for Beazer's actions.  Although Scruggs believes that Beazer made inappropriate comments because of Scruggs' gender and as the result of sex discrimination, Scruggs' claims constitute mere speculation which cannot defeat summary judgment.  *See Mills v. First Federal Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 841-42 (7th Cir. 1996).  The fact that an employee who is a member of a protected class has suffered adverse employment actions does not allow an inference of discrimination.  As discussed above, there must be some evidence showing a causal link between the prohibited animus and the adverse employment action.  *See Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 762 (7th Cir. 2001).

Because the Plaintiff has failed under the direct method, she must rely on the burden-shifting framework of the indirect method.  *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003); *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

2. *Indirect Method*

Under the indirect burden-shifting approach, the plaintiff must first come forward

with evidence of a *prima facie* case of discrimination.[8]  *McDonnell Douglas Corp. v. Green*, 411 U.S. at 792.  To establish a *prima facie* case of sex discrimination under the indirect method of proof, Scruggs must show: (1) she is a member of a protected class; (2) she was meeting Garst's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who were not in the protected class.  *Rhodes v. Illinois Dep't of Transportation,* 359 F.3d 498, 504 (7th Cir. 2004); *Hoffman v. Primedia Special Interest Publications*, 217 F.3d 522, 524 (7th Cir. 2000); *Stalter v. Wal-Mart Stores, Inc*., 195 F.3d 285 (7th Cir. 1999).  If the employee offers evidence supporting a *prima facie* case, a presumption of discrimination arises, and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for taking the adverse employment action.  *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998).  And if the employer produces evidence of a nondiscriminatory reason for its action, the burden then shifts back to the employee to prove by a preponderance of the evidence that the employer's proffered reason for its decision was not the actual reason but rather a pretext for discrimination.  *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 394-95 (7th Cir. 1998).  If the employer's stated, non-discriminatory ground for the action of which the Plaintiff complains is the true ground, then that action is not pretext.  If it is not the true ground,

---

[8]The *prima facie* case analysis cannot be used by rote but must be adapted to fit the varying facts of Title VII discrimination cases.  *Flores v. Preferred Tech. Group*, 182 F.3d 512 (7th Cir. 1999).

the case cannot be disposed of on summary judgment.  *Forrester v. Rauland-Borg Corp.*,

453 F.3d 416, 417 (7th Cir. 2006).

Garst does not dispute that Scruggs was a member of a protected class or that she

was meeting Garst's legitimate performance expectations.  Garst stated that the "only

adverse employment actions Scruggs may claim meet the third element . . . are the 2004

decision to eliminate her position and the corresponding 2005 decision to re-hire Glover

as Research Assistant.  Beazer took no adverse employment action against Scruggs,

particularly on or after February 7, 2004."  Defendant's Motion at 22.  Accordingly, the

only element of the *prima facie* case in dispute is the fourth element – whether Scruggs

was treated less favorably than similarly situated employees who were not in the protected

class.

To be "similarly situated," a plaintiff must show that her "performance,

qualifications, and conduct were comparable to the nonprotected class member in 'all

material respects.'"  *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 274 (7th Cir.

2004).  "Broad-brushed, conclusory allegations" are not sufficient to show that

nonprotected employees are similarly situated.  *Scaife v. Cook County*, 446 F.3d 735, 740

(7th Cir. 2006).  Rather, comparative evidence allowing the Court to make a reliable

analysis is necessary.  *Dandy*, 388 F.3d at 274.

Scruggs seemingly argues that Glover is a similarly situated employee who was

treated differently – more fairly – than her.  Scruggs stated that "after her complaints, her

new duties, combined with her old duties, were requiring her to do the same job as Glover

with half the pay . . . Worrall had a telephone conference with Horrigan and HR shortly

after that, and noted she had responsibility like Glover, with greater tenure, and was

earning about $24,000 a year, compared to $37,000 for Glover!"  Plaintiff's Response at

13.  But Glover is not a similarly situated employee to Scruggs.

Glover was employed at Garst as a Research Assistant/Specialist, which was

classified as exempt, salaried under applicable wage/hour laws, whereas Scruggs'

position as a Research Technician was classified as non-exempt, hourly.  Worrall

Affidavit at ¶ 3-4; Scruggs Deposition at 35.  Glover also holds a Bachelor of Science

degree in Agronomy, whereas Scruggs has a high school education, but no college

degree.  Scruggs Deposition at 9-10, 27-30.  Additionally, there existed differences in

Glover and Scruggs' job duties and responsibilities.  As a Research Technician, Scruggs'

responsibilities included, but were not limited to, electronic data management, data

collection, testing, and summarizing results, coordinating greenhouse duties with the

Group Manager and Research Specialist, and ordering supplies.  Glover's duties included,

but were not limited to, managing plot care, equipment maintenance, chemical

application, planting, harvesting, wheat breeding, and seed genetic processes.  *See*

Scruggs Deposition at 27-29.  Thus, by Scruggs' own statements, Glover is not a similarly

situated male employee.

Scruggs has failed to set forth a genuine issue of material fact as to whether a

similarly situated employee was treated differently.  Thus, the Court need not address any of the underlying allegations of disparate treatment.  *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (holding that "we cannot compare [an employer's] treatment of [a plaintiff with that co-worker] ... [if the plaintiff] fail[s] to meet her burden of establishing that [the co-worker] is a similarly situated employee.").  Because Scruggs has failed to establish a *prima facie* case of discrimination, this Court need not proceed in its analysis under the burden-shifting formula.  The Defendant's motion for summary judgment is **GRANTED** as to this claim.

## C. Hostile Work Environment

Scruggs also alleges that Beazer's comments and actions subjected her to a hostile work environment.  "'[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment.'" *Cowan v. Prudential Ins. Co. of America*, 141 F.3d 751, 755 (7th Cir. 1998) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986)).  A *prima facie* case of hostile environment sexual harassment is established upon a showing that the plaintiff: (1) was subjected to unwelcome sexual harassment; (2) the harassment was based on her sex; (3) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive working environment that seriously affected her psychological well-being; and (4) there is a basis for employer liability.  *Moser v. Indiana Dept. of Corrections*, 406 F.3d 895, 902 (7th Cir. 2005) (citing *Hall v. Bodine Elec. Co.*,

276 F.3d 345, 354-55 (7th Cir. 2002)).

Here, the parties' dispute centers on whether Beazer's conduct was sexual in character or purpose and whether Beazer's conduct was sufficiently severe or pervasive to have altered the condition of Scruggs' employment such that it created a hostile working environment.  In determining whether Scruggs' work environment was hostile, this Court must examine the totality of the circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 534 (7th Cir. 1993) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  The Court employs both a subjective and objective viewpoint in evaluating the above-mentioned factors:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the condition of the victim's employment, and there is not a Title VII violation.

*Saxton*, 10 F.3d at 534 (quoting *Harris*, 510 U.S. at 21-22).  The plaintiff need not show that the conduct was both severe and persuasive to establish a hostile environment. *Cerros v. Steel Tech., Inc. (Cerros II),* 398 F.3d 944, 950 (7th Cir. 2005).

Scruggs alleges that Beazer's conduct and comments, along with the later actions of Garst, were sexual in character and purpose.  The examples Scruggs presents as evidence of Beazer's harassment include the following: Beazer commented on Scruggs'

22

background by stating that she was a "redneck," stupid, that she was made for the "back

seat of a car," that her parties were "drunken fiascos," and that her son is a "lowlife"; in

June of 2003, Beazer introduced Scruggs to a large business group as the breeder "in

charge of cookies with sprinkles" (Plaintiff's Response at 8); at Beazer's wife's

instructions, Scruggs had to prepare a fortieth birthday party for Beazer and advance the

money (Plaintiff's Response at 8); and after a March 2004 meeting between Beazer,

Scruggs, and Worrall in San Antonio, Texas, Beazer ridiculed Scruggs by whistling,

dancing, and laughing at her (Plaintiff's Response at 10).  Scruggs also stated that Beazer

called Glover "fat" and told Brian Rice that he was stupid because he was from Arkansas.

Even assuming that Scruggs perceived her work environment as hostile or abusive

due to Beazer's behavior, her claim cannot withstand summary judgment.  On the record

presently before the Court, a reasonable person would not have found the work

environment at the Brookston plant to be severe or pervasive within the meaning of Title

VII.

Beazer's conduct and comments were sporadic and often occurred months apart.

To be actionable under Title VII, the incidents must be more than episodic, but rather must

be sufficiently continuous and concerted to rise to the level of pervasive.  *Faragher v. City

of Boca Raton*, 524 U.S. 775, 787 (1998).  *See Kampmier v. Emeritus Corp.,* 472 F.3d 930,

941 (7th Cir. 2007) (minor or isolated incidents are generally insufficient to rise to the

level of objectively offensive conduct); *Savino v. C.P. Hall Co.*, 199 F.3d 925, 933 (7th

Cir. 1999) (stating that "sporadic use of abusive language, gender-related jokes, and occasional teasing are fairly commonplace in some employment settings and do not amount to actionable harassment").

Moreover, the harassment claimed by Scruggs lacks severity.  Title VII is not a code of general civility and "'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788 (internal citations omitted).  *See also Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998) (asserting that Title VII's prohibition should be restricted to truly egregious behavior).  Certainly, Beazer's conduct was inappropriate and rude, but it did not rise to the level of harassment that is actionable.  Scruggs has not asserted that Beazer engaged in unwelcome, physical touching, there are no allegations that Beazer attempted to induce Scruggs to succumb to a sexual relationship, and, on the record before this Court, there is only one comment that is even arguably a sexually based remark (*e.g.* that Scruggs was made for the "back seat of a car").  Rather, Scruggs complains of no more than vulgar banter and boorish behavior.  *See Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir. 1995) (finding no actionable harassment when the employer did not threaten the plaintiff, did not touch her, did not expose himself or show dirty pictures, and did not invite her explicitly or impliedly to have sex with him or to go out on a date with him).  Because we hold that the incidents alleged by Scruggs do not constitute harassment, we need not discuss Garst's liability for

24

the conduct of its employees.  Accordingly, Garst is entitled to summary judgment on Scruggs' hostile work environment claim.

    D.  <u>Retaliation</u>

    Title VII makes it unlawful for an employer to discriminate against an employee for opposing any practice made unlawful by the Act or for engaging in other statutorily protected conduct.  42 U.S.C. § 2000e-3(a).  *See Moser,* 406 F.3d at 903.  A Plaintiff can prove retaliation through the direct or indirect methods.  *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 567 (7th Cir. 2004) (citation omitted).  Each method will be addressed in turn.

    *1.  Direct Method*

    To prove retaliation under the direct method, a plaintiff must show that she engaged in protected activity and as a result suffered an adverse employment action.  *See Sylvester*, 453 F.3d at 902.  The direct method can be supported with direct evidence or circumstantial evidence.  *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005).  "[D]irect evidence 'essentially requires an admission by the decision maker that his actions were based on the prohibited animus' and so is rarely present."  *Id*. (citation omitted).  The Plaintiff does not offer any direct evidence of retaliation, so she must rely on circumstantial evidence to prove retaliation under the direct method.

    The Plaintiff engaged in statutorily protected conduct, and she identifies several actions she believes to be adverse employment actions.  But to establish a *prima facie* case of retaliation under the direct method, she must show a "causal link between the protected

expression and the adverse action." *Id*.

With regard to the determination of a causal link, '[t]he obvious place to start is the temporal sequence between the two; oftentimes it is unnecessary to look any further." *Sweeney v. West*, 149 F.3d 550, 555 (7th Cir. 1998). *See Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). (stating that temporal proximity is "rarely sufficient in and of itself to create a triable issue.").[9] A Plaintiff relying on temporal proximity to establish causation must show that the adverse employment action occurred soon after the statutorily protected conduct.  A lengthy period of time between a plaintiff's protected expression and the adverse action "discount[s] the casual connection between the two events." *Samuelson v. Durkee/French/Airwick*, 976 F.2d 1111, 1115 (7th Cir. 1992). *See Lalvani v. Cook County Ill.*, 269 F.3d 785, 790 (7th Cir. 2001) (stating that a plaintiff can typically satisfy a *prima facie* case "when an adverse employment action follows close on the heels of protected expression.") (emphasis added).

Scruggs claims that there is substantial evidence of a casual link between her complaints about Beazer, the filing of her first EEOC charge, and the loss of her employment.  Scruggs, however, hasn't cited or pointed to any evidence in the record to support her statement in this regard.  *See Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1001 (7th Cir. 2004) (where a party fails to cite the record, the court "will

---

[9]In *Culver*, for example, the Seventh Circuit found a 72-hour period between protected activity and an adverse action insufficient to *alone* establish causation.  *Culver*, 416 F.3d at 546.

not root through the . . . documents . . . that make up the record here to make his case for [her]"); *Bombard*, 92 F.3d at 562 ("It is not [the court's] function to scour the record in search of evidence to defeat a motion for summary judgment.").

In reply, Garst states that the planning to restructure all of the wheat breeding facilities, including Brookston, began in mid-2004, months before Scruggs filed her initial charge of discrimination.  Moreover, Garst cited to evidence in the record to show that Garst announced its restructuring plan in November 2004, prior to Scruggs' initial EEOC charge.  Further, the decision not to hire Scruggs for the Research Assistant position was made in April 2005, four months after Scruggs filed her initial EEOC charge, many months after she initially complained about Beazer's conduct, and before she filed her second EEOC charge.  As the Seventh Circuit has noted, "[a]s the time separating the protected conduct and the adverse employment action grows, the causal inference weakens and eventually time becomes the plaintiff's enemy."  *Lalvani*, 269 F.3d at 790.  *See Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390 (7th Cir.1999) (four months negates causal inference); *Davidson v. Midelfort Clinic*, 133 F.3d 499 (7th Cir.1998) (no causal inference where employee was terminated five months after filing EEOC complaint, even though complaint was still pending); *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003 (7th Cir.2000) (no causal inference after a year).  Here, Scruggs has not provided support for any inference she is attempting to raise relating to the timing of the restructuring decision or the decision not to hire her for the new position.  Her speculation about those decisions

is insufficient to support a retaliation claim.  *See Flannery v. Recording Industry Ass'n of America*, 354 F.3d 632, 643 (7th Cir. 2004) ("retaliation claims must be based on facts, and not on speculative theories"); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) ("Speculation based on suspicious timing alone, however, does not support a reasonable inference of retaliation; instead, plaintiffs must produce facts which somehow tie the adverse decision to the plaintiffs' protected actions.").  Scruggs has failed to show a causal connection between the protected expression and the adverse action.  Consequently, her claims under the direct method fail, and she must rely on the indirect method to preclude summary judgment.

### 2.  Indirect Method

To establish a Title VII retaliation claim under the indirect method, a plaintiff must demonstrate that: (1) she engaged in statutorily protected activity; (2) she was performing her job according to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in such protected activity.  *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005).   If a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for his actions. *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 868 (7th Cir. 1995) (quoting *McDonnell Douglas*, 411 U.S. at 792).  Once such a reason is articulated, the burden returns to the plaintiff to show that the employer's proffered reasons for the

adverse employment action are merely pretext.[10]   *Dunnning*, 62 F.3d at 868.

The Plaintiff has failed to establish a *prima facie* case of retaliation because she fails to identify similarly situated employees who were treated more favorably and who did not engage in protected activity.  To be "similarly situated," the Plaintiff "must show that her performance, qualifications, and conduct were comparable to the nonprotected class members in 'all material respects.'" *Dandy*, 388 F.3d at 273 (citations omitted).  Evidence relevant to the comparison includes: (1) a plaintiff's current and past salary; (2) the salary of her comparators; (3) when her comparators began working for the employer; and (4) qualifications, experience, and education.  *Id*.

The Plaintiff has not designated evidence that would allow the Court to that find that Groves is a similarly situated employee to the Plaintiff.  Scruggs argued in her brief that she was paid less to do the same work as Groves.  However, Groves was an exempt, salaried employee, whereas Scruggs was a non-exempt, hourly employee.  Groves and Scruggs are also not similarly-situated with regard to qualifications, experience, and education.  When the hiring decision was made in April 2005, Glover had greater education and overall experience than Scruggs.  Glover held a  Bachelor of Science degree in Agronomy, whereas Scruggs has a high school education, but no college degree.

---

[10]"[T]he question in a discrimination case is not whether the employer's state nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground." *Forrester*, 453 F.3d at 417.  Pretext, then, is a "deliberate falsehood."  *Id*. at 419.

Scruggs Deposition at 9-10, 27-30.  Furthermore, Scruggs has designated no evidence that would allow the court to find that Groves is similarly situated to the Plaintiff or that he is an appropriate comparator.

Because the Plaintiff has failed to identify similarly situated employees outside the protected class, she cannot make out a *prima facie* case of discrimination under the indirect method.  Summary judgment on this claim is, therefore, appropriate.

VI.  Conclusion

For the foregoing reasons, the Plaintiff's Motion to Strike (Docket No. 46) is **DENIED**.  The Defendant's Motion for Summary Judgment (Docket No. 38) is **GRANTED** in its entirety.

**SO ORDERED.**

**Dated: May 4, 2007**

**S/ ALLEN SHARP**

**ALLEN SHARP, JUDGE**
**UNITED STATES DISTRICT COURT**
